1  Alexander E. Potente (State Bar No. 208240)
   *alex.potente@clydeco.us*
2  Jason J. Chorley (State Bar No. 263225)
   *jason.chorley@clydeco.us*
3  CLYDE & CO US LLP
   150 California Street, 15th Floor
4  San Francisco, California 94111
   Telephone:  (415) 365-9800
5  Facsimile:   (415) 365-9801

6  Richard B. Goetz (State Bar No. 115666)
   *rgoetz@omm.com*
7  Zoheb Noorani (State Bar No. 253871)
   *znoorani@omm.com*
8  Jessica A. Snyder (State Bar No. 329602)
   *jsnyder@omm.com*
9  O'Melveny & Myers LLP
   400 South Hope Street, Suite 1900
10 Los Angeles, California 90071
   Telephone:  (213) 430-6000
11 Facsimile:   (213) 430-6407

12 Attorneys for Plaintiff
   WESTCHESTER FIRE INSURANCE
13 COMPANY, as successor in interest to
   INDUSTRIAL UNDERWRITERS
14 INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTCHESTER FIRE INSURANCE COMPANY, a Pennsylvania corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE ROMAN CATHOLIC BISHOP OF ORANGE, a California corporation sole, and DOES 1 through 50,<br><br>Defendants. | Case No.<br><br>**WESTCHESTER FIRE INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**JURY DEMAND**<br><br>**(28 U.S.C. § 2201 and 28 U.S.C. § 1332)** |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Plaintiff Westchester Fire Insurance Company, as successor in interest to Industrial Underwriters Insurance Company (collectively, "Westchester"), brings this complaint seeking a declaratory judgment against defendant The Roman Catholic Bishop of Orange (hereinafter referred to as the "Diocese of Orange") and, in support thereof, alleges as follows:

## NATURE OF THE ACTION

1. Westchester seeks declaratory relief under 28 U.S.C. § 2201(a) requesting a judgment declaring the rights and obligations of the parties in connection with an actual controversy arising under certain policies of liability insurance issued by Westchester to the Diocese of Orange.

2. Westchester seeks to resolve the insurance coverage dispute between Westchester and the Diocese of Orange regarding the underlying lawsuits in which alleged survivors of childhood sexual abuse (collectively, the "CCVA plaintiffs") have sued the Diocese of Orange and its affiliates under the California Child Victims Act, AB 218, codified as California Code of Civil Procedure § 340.1, *et seq.* (collectively, the "CCVA Claims"), more fully described below. The Diocese of Orange seeks defense and indemnity from Westchester for the CCVA Claims under one or more insurance policies Westchester issued to the Diocese of Orange from 1981 to 1984. Westchester seeks a declaration regarding its defense or indemnity obligations, if any, under the insurance policies Westchester issued to the Diocese of Orange. Specifically, Westchester seeks a declaration regarding the CCVA Claims and any other similar sexual abuse or molestation claims against the Diocese of Orange or any of its affiliates that claim insured status under Westchester's insurance policies.

3. Westchester, under its umbrella policies, seeks a determination that it has no present duty to defend the CCVA Claims unless and until the Diocese of Orange satisfies the retained limit of Westchester's umbrella policies. Westchester also seeks

WESTCHESTER'S COMPLAINT FOR DECLARATORY JUDGMENT

a declaration that it is entitled to reimbursement of any defense expenses paid on behalf of the CCVA Claims. This includes defense expenses it paid for the lawsuit filed by John Doe E.G.D. against the Diocese of Orange, Los Angeles County Superior Court, case no. 22STCV14258, Judicial Council Coordinated Proceeding ("JCCP") 5101 (the "*John Doe E.G.D.* action"). Westchester seeks a declaration that it is also entitled to reimbursement of any indemnity, in the form of settlement or judgments, paid to resolve the CCVA Claims, to the extent it is determined that Westchester owed no coverage for the CCVA Claims, including the *John Doe E.G.D.* action.

## PARTIES

4. Westchester is a corporation organized under the laws of Pennsylvania with its principal place of business in Pennsylvania and is licensed to operate in the State of California. Westchester issued excess umbrella insurance policies to the Diocese of Orange. The Diocese of Orange now seeks coverage, in the form of defense and indemnity, for the CCVA Claims under the Westchester umbrella policies.

5. The Diocese of Orange is a corporation sole incorporated in the state of California, with its principal place of business in Garden Grove, California.

6. Westchester is ignorant of the true names and capacities of each of the defendants designated in this complaint as Does 1-50. Westchester is informed and believes and, on that basis, alleges that each of the defendants sued as Does 1-50 is in some manner interested in the controversy alleged in this complaint. Upon learning the true name and capacity of each of the Doe defendants, Westchester will amend this complaint accordingly.

7. Westchester is informed and believes and thereon alleges that at all times relevant hereto each of the defendants, including without limitation Does 1-50, was the agent, affiliate, officer, director, manager, principal, alter-ego, or employee of the

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

other defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship, or employment and actively participated in, or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged herein, with full knowledge of all the facts and circumstances.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(1), because there is complete diversity between Westchester, the Diocese of Orange, and the Insurer Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. This Court has original jurisdiction by virtue of the Declaratory Judgments Act, 28 U.S.C. § 2201(a), because this matter presents an actual controversy between the Diocese of Orange and Westchester. The Diocese of Orange claims Westchester owes the Diocese of Orange defense and indemnity for the CCVA Claims under the umbrella insurance policies Westchester issued to the Diocese of Orange for the CCVA Claims. Westchester disputes that it has any present obligation to defend the Diocese of Orange and cannot make a determination as to indemnity without more information that the Diocese has failed to provide to Westchester.

10. Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(1) and (2) because the Diocese of Orange resides in the State of California in this judicial district, and a substantial part of the events giving rise to the claim occurred in this judicial district.

11. Venue is proper in the Southern Division of the Central District of California because the Dioceses of Orange resides in the Southern Division.

## FACTUAL ALLEGATIONS

**A.    The Industrial Excess Policies**

12. Industrial Underwriters Insurance Company issued commercial umbrella policy no. JU 835-8295 to Roman Catholic Bishop of Orange for consecutive policy

WESTCHESTER'S COMPLAINT FOR DECLARATORY JUDGMENT

periods from June 18, 1981 to July 1, 1982 (the "1981-1982 Industrial Excess Policy"), July 1, 1982 to July 1, 1983 (the "1982-1983 Industrial Excess Policy"), and July 1, 1983 to July 1, 1984 (the "1983-1984 Industrial Excess Policy") (collectively, the "Industrial Excess Policies"). The parties have not located complete copies of the Industrial Excess Policies. The terms and conditions cited in this Complaint are based on specimen policy forms that may or may not have been included with the Industrial Excess Policies.

13. The Industrial Excess Policies provide coverage for the Diocese of Orange and certain of its affiliates only pursuant to all of the terms, conditions, limitations, exclusions, and endorsements contained within the Industrial Excess Policies.

14. As umbrella policies, the Industrial Excess Policies, subject to their terms, definitions, conditions, limitations, exclusions, and endorsements, provide that Westchester will "pay on behalf of the insured the ultimate net loss in excess of the retained limit hereinafter stated, which the insured may sustain by reason of liability imposed upon the insured by law, arising out of an occurrence or assumed by the insured under contract for: (a) Personal Injury Liability…."

15. The retained limit for the Industrial Excess Policies is defined as "the greater of: (a) the total of the applicable limits of the underlying policies listed in Schedule A hereof, and the applicable limits of any other insurance collectible by the insured [$500,000]; or (b) an amount as stated in Item 4(c) of the declarations as the result of any one occurrence not covered by the said policies or insurance [$10,000]." To the extent the CCVA Claims are covered under the Industrial Excess Policies, the CCVA Claims are also covered by the underlying insurance. The amount stated in Item 4(c) of the declarations therefore does not apply, and the applicable limits of the underlying policies constitute the retained limit for purposes of the CCVA Claims.

16. The 1981-1982 Industrial Excess Policy identifies Aetna Casualty and Surety Company policy no. 05FP218350, effective June 18, 1981 to July 1, 1981, Aetna Casualty and Surety Company policy no. 05FP714221, effective July 1, 1981 to July 21, 1981 (collectively the "Aetna Primary Policies"), and Centennial Insurance Company general liability policy no. 29170453, effective July 21, 1981 to July 1, 1982, in its schedule of underlying insurance. The schedule of underlying insurance in the 1982-1983 and the 1983-1984 Industrial Excess Policies identify Centennial Insurance Company general liability policy no. 29170453, with effective dates commensurate with the 1982-1983 and the 1983-1984 Industrial Excess Policies (collectively with the Centennial Insurance Company policy effective from July 21, 1981 to July 1, 1982, the "Centennial Primary Policies.")

17. Coverage under the Industrial Excess Policies is not implicated until the retained limit is satisfied. The Industrial Excess Policies provide that "[l]iability of the company with respect to any one occurrence shall not attach unless and until the insured, the company on behalf of the insured, or the insured's underlying insurer, has paid the amount of the retained limit."

18. The Industrial Excess Policies further provide that "[t]his policy shall not apply to defense, investigation, settlement, or legal expenses covered by underlying insurance."

19. The Industrial Excess Policies further provide that "[i]f underlying insurance is exhausted by any occurrence, the company shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the insured resulting from the same occurrence, but only where this policy applies immediately in excess of such underlying insurance, without the intervention of excess insurance of another carrier."

20. Following payment of the underlying limits, the Industrial Excess Policies provide coverage for excess loss arising out of any one "occurrence" because

of "personal injury liability," defined as "bodily injury, sickness, disease, disability, shock, mental anguish and mental injury."

21. To the extent the CCVA Claims include allegations of "personal injury liability," such "personal injury liability" does not implicate coverage under the Industrial Excess Policies unless it takes place during the policy period and is caused by an "occurrence." An "occurrence" is defined as "an accident or happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally causes injury to persons or tangible property during the policy period. All damages arising out of such exposure to substantially the same general conditions shall be considered as arising out of one occurrence." The Industrial Excess Policies, therefore, do not cover liability for bodily injury that does not result from an "occurrence" as defined in the policy.

22. The 1981-1982 Industrial Excess Policy, pursuant to Endorsement 3, and the 1982-1983 Industrial Excess Policy, pursuant to Endorsement 8, provide that coverage also applies "in accordance with the applicable provisions of the 'underlying errors & omissions or professional liability insurance' for the amount of 'loss' which is in excess of the applicable limits of the 'underlying errors & omissions or professional liability insurance' described in the Declarations." The 1983-1984 Industrial Excess Policy, pursuant to Endorsement No. 13 titled Excess Following Underlying Insurance, states "Except insofar as coverage is available to the insured in the underlying policies listed in Schedule A, this policy does not apply to: Liability Arising Out of Pastoral Malpractice."

23. The 1981-1982 Industrial Excess Policy and the 1982-1983 Industrial Excess Policy are subject to the provisions of the underlying insurance with the exception of "(a) any obligation to investigate, defend, or pay for costs and expenses incident to the same; (b) the limits of liability; (c) any 'other insurance' provision; and (d) any other provisions therein which are inconsistent with the provisions of this

Endorsement." The Industrial Excess Policies do not provide excess errors and omissions coverage until the underlying insurance is exhausted through the payment of settlement or judgment.

24. The Centennial Primary Policies underlying each of the Industrial Excess Policies include a Pastoral Professional Liability Coverage Part, the insuring agreement provides coverage for "damages because of any act or omission of the insured and arising out of the performance of professional services for others in the insured's capacity as a pastoral counselor." The Pastoral Professional Liability Coverage Part contains exclusions that provide it does not apply "(a) to any dishonest, fraudulent, criminal or malicious act or omission of any insured," or "(h) to licentious, immoral or sexual behavior intended to lead to or culminating in any sexual act."

25. The Industrial Excess Policies, subject to their terms, definitions, conditions, limitations, exclusions, and endorsements, and to the extent they contain such language based on specimen forms, require that in the event of an occurrence,

> "written notice shall be given as soon as practicable to the company or any of its authorized agents. Such notice shall contain particulars sufficient to identify the insured and the fullest information obtainable at the time. The insured shall give like notice of any claim made on account of such occurrence. If legal proceedings are begun the insured, when requested by the company, shall forward to it each paper thereon, or a copy thereof, received by the insured or the insured's representatives, together with copies of reports of investigations made by the insured with respect to such claim proceedings."

26. The Industrial Excess Policies, subject to their terms, definitions, conditions, limitations, exclusions, and endorsements, and to the extent they contain such language based on specimen forms, provide as follows:

> "[e]xcept as provided in Insuring Agreement II (Defense. Settlement, or in Insuring Agreement V (Retained Limit - Limit of Liability) with respect to the exhaustion of the aggregate limits of underlying policies listed in Schedule A. or in Condition J (Underlying Insurance) the company shall not be called upon to assume charge of the settlement or defense of any claim made or proceeding instituted against the insured,

but the company shall have the right and opportunity to associate with the insured in the defense and control of any claim or proceeding reasonably likely to involve the company. In such event the insured and the company shall cooperate fully."

## B. The CCVA Claims

27. Governor Gavin Newsom signed California Assembly Bill 218 into law in October 2019. That statute is called the California Child Victims Act (the "CCVA"). The CCVA allows survivors of child sexual assault to bring civil lawsuits arising out of their sexual assault until their 40th birthday or within five years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual assault, whichever is later.

28. The CCVA also opened a "revival window" during which all survivors (regardless of age) were permitted to file civil lawsuits. This window opened on January 1, 2020, and closed on December 31, 2022.

29. The Diocese of Orange has been named as a defendant in over two hundred lawsuits under the CCVA alleging childhood sexual abuse that have been coordinated in JCCP 5101 (the "coordinated proceeding"). As part of the coordinated proceeding, a Master Complaint was approved for filing by all plaintiffs along with individual "Notices of Adoption" of the Master Complaint. These lawsuits include claims of abuse by priests and clergy who served the Diocese of Orange and certain of its affiliates in senior leadership roles.

30. Senior Diocese of Orange officials have known for decades about the clergy committing sexual abuse. Knowledge by Diocese of Orange officials includes, but is not limited to:

[redacted]

[lines 1-15 redacted]

31. The CCVA plaintiffs allege in the CCVA Claims sexual abuse by and against the Diocese of Orange and certain of its affiliates, and clergy, agents, and employees from the 1970s through the 1990s.

32. The CCVA plaintiffs assert in the CCVA Claims that the Diocese of Orange or its affiliates knew about the sexual abuse of minors. In the Master Complaints for the CCVA Claims, plaintiffs allege that the Diocese of Orange knew or should have known of the abuse and allowed it to occur:

> At all times herein, the DEFENDANTS RELIGIOUS ENTITIES, and each of them, knew or should have known that the DOE PERPETRATOR was unfit, posed a risk of harm to minor children, and/or posed a risk of childhood sexual assault to minor children in its care, custody, and control. Specifically, DEFENDANTS RELIGIOUS ENTITIES knew or should have known, or were otherwise on notice, that the DOE PERPETRATOR had engaged in misconduct that created the risk of childhood sexual assault and failed to take

reasonable steps or to implement reasonable safeguards to avoid acts of childhood sexual assault by the DOE PERPETRATOR on minors, including Plaintiff.

(Amended Master Complaint in JCCP 5101 ¶ 46.)

33. The CCVA plaintiffs allege in the CCVA Claims that the Diocese of Orange or its affiliates knowingly hid known abuse and hindered efforts to prevent it:

Defendants also intentionally and willfully implemented various measures intended and designed to, or which effectively, made the DOE PERPETRATOR's conduct harder to detect including, but not limited to:

a. Assigning and permitting the DOE PERPETRATOR to remain in a position of authority and trust after DEFENDANTS RELIGIOUS ENTITIES and DOES 1 through 500 knew or should have known that DOE PERPETRATOR was an unfit agent, servant, employee, member and/or volunteer;

b. Assigning and permitting the DOE PERPETRATOR to remain in a position of authority and trust after DEFENDANTS RELIGIOUS ENTITIES and DOES 1 through 500 knew or should have known that DOE PERPETRATOR engaged in misconduct that created a risk of childhood sexual assault;

b. [sic] Placing the DOE PERPETRATOR in a separate and secluded environment, including placing him in charge of children, which allowed the DOE PERPETRATOR to sexually and physically interact with and assault children, including Plaintiff;

c. Authorizing the DOE PERPETRATOR to come into contact with minors, including Plaintiff, without adequate supervision;

d. Failing to inform, or concealing from Plaintiff's parents and law enforcement officials the fact that Plaintiff and others were or may have been sexually assaulted after Defendants knew or should have known that the DOE PERPETRATOR may have sexually assaulted Plaintiff or others, thereby enabling Plaintiff to continue to be endangered and sexually assaulted, and/or creating the circumstance where the Plaintiff and others were less likely to receive

medical/mental health care and treatment, thus exacerbating the harm to Plaintiff;

e. Holding out and affirming the DOE PERPETRATOR to Plaintiff and Plaintiff's parents, other children and their parents, and to the community, as being a person in good standing and who was trustworthy;

f. Failing to take reasonable steps, and to implement reasonable safeguards to avoid acts of unlawful sexual conduct by the DOE PERPETRATOR with students, minor children;

g. Failing to put in place a system or procedure to supervise or monitor employees, volunteers, representatives or agents to ensure that they did not molest or assault minors in Defendants' custody or care, including Plaintiff.

(Master Complaint in JCCP 5101, ¶ 49.)

34. The plaintiffs in the CCVA Claims further assert that the Diocese of Orange or its affiliates failed to stop the sexual abuse, covered it up, and then lied about it. In the Amended Master Complaint for the CCVA Claims, the plaintiffs allege that, "This failure was a part of Defendants' intended plan and arrangement to conceal wrongful acts, to avoid and inhibit detection, to block public disclosure, to avoid scandal, to avoid the disclosure of their tolerance of child sexual molestation and assault, to preserve a false appearance of propriety, and to avoid investigation and action by public authority including law enforcement." (Master Complaint in JCCP 5101 ¶ 52.)

35. The CCVA Claims allege different legal theories, including intentional torts, strict liability, and negligence.

36. The Diocese of Orange seeks defense and indemnity coverage under the Industrial Excess Policies for the CCVA Claims. Pursuant to the terms, conditions, definitions, and endorsements of the Industrial Excess Policies, Westchester has not agreed to defend the CCVA Claims unless and until the Diocese of Orange satisfies

the retained limit. Westchester has agreed to monitor and investigate the CCVA Claims that allege abuse during one or more of the policy periods of the Industrial Excess Policies, subject to a full and complete reservation of rights. Westchester has agreed to defend the *John Doe E.G.D.* action, subject to a full reservation of rights. As part of Westchester's agreement to defend the *John Doe E.G.D.* action, Westchester has expressly reserved its right to recoup all defense costs and indemnity costs associated with any and all uncovered claims.

37. Westchester has reserved its right to deny coverage for any claim arising out of an injury that was not caused by an occurrence or that was expected or intended by the Diocese of Orange.

38. Westchester has fully and completely reserved all of its rights against the Diocese of Orange.

### C. Requests for Information

39. Westchester lacks information needed to evaluate and adjust the CCVA Claims for which the Diocese of Orange seeks coverage under the Industrial Excess Policies.

40. The Diocese of Orange has advised Westchester that it does not have all relevant documents related to the CCVA Claims due to the stay of discovery in the coordinated proceeding. The Diocese of Orange, however, should have, and has not provided Westchester with, material documents pertinent to the merits of the CCVA Claims, which should include documents describing the Diocese of Orange's procedures, policies, and practices for handling clergy sexual abuse allegations; documents reflecting the Diocese of Orange's knowledge of the scope and pervasiveness of sexual abuse by clergy in the Diocese of Orange beyond just personnel files; documents concerning the possible concealment of sexual abuse; documents regarding transfer of clergy who were accused of sexual abuse; and

documents showing what the Diocese of Orange did to monitor clergy sexual abuse and protect children.

## **FIRST CLAIM FOR RELIEF – AS AGAINST DIOCESE OF ORANGE**
## **(Declaratory Judgment – Duty to Defend)**

41. Westchester incorporates by reference, as if fully restated herein, each of the preceding paragraphs.

42. An actual controversy has arisen and now exists between Westchester, on the one hand, and the Diocese of Orange, on the other hand, concerning their rights and duties under the Industrial Excess Policies regarding defense of the CCVA Claims.

43. The Diocese of Orange contends that Westchester has an obligation to defend the Diocese of Orange now for CCVA Claims that fall within the policy periods of the Centennial Primary Policies because Centennial Insurance Company is insolvent. The Diocese of Orange asserts that the Industrial Excess policies must "drop down" to provide a defense and primary layer indemnity coverage.

44. Westchester asserts that the Industrial Excess Policies are not implicated unless and until the limits of the underlying policies are paid either by the Diocese of Orange or its underlying insurer, and therefore Westchester has no present "drop down" obligation to defend the Diocese of Orange against the CCVA Claims.

45. Pursuant to 28 U.S.C. § 2201, Westchester desires a judicial determination of its rights and obligations under the Industrial Excess Policies regarding defense of the Diocese of Orange for the CCVA Claims that, to the extent the CCVA Claims are covered by the underlying Centennial Primary Policies, and the underlying limits of the Centennial Primary Policies have not been exhausted with respect to an "occurrence," Westchester has no duty to defend the CCVA Claims.

46. Further, to the extent that Westchester has no duty to indemnify the Diocese of Orange for the CCVA Claims for the reasons discussed below in

Westchester's Second Claim for Relief, it also would have no duty to defend the CCVA Claims.

47. A declaration is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and duties as aforementioned. Said controversy is incapable of resolution without judicial adjudication. Accordingly, Westchester has no plain, speedy, and adequate remedy at law. Westchester requests a declaration that Westchester has no duty to defend the Diocese of Orange for the CCVA Claims until the underlying limits of the Centennial Primary Policies have been "exhausted by any occurrence."

48. Pursuant to 28 U.S.C. § 2201, Westchester is entitled to a judicial determination concerning the parties' rights and obligations, if any, under the Industrial Excess Policies for the CCVA Claims.

## SECOND CLAIM FOR RELIEF – AS AGAINST DIOCESE OF ORANGE
### (Declaratory Judgment – No Duty to Indemnify)

49. Westchester incorporates by reference, as if fully restated herein, each of the preceding paragraphs.

50. An actual controversy has arisen and now exists between Westchester, on the one hand, and the Diocese of Orange, on the other hand, concerning their respective rights and duties under the Industrial Excess Policies as respects potential indemnity with respect to the CCVA Claims.

51. The Diocese of Orange contends that Westchester has an obligation to indemnify the Diocese of Orange for the CCVA Claims.

52. Westchester seeks a judicial determination of its indemnity obligation, if any, to the Diocese of Orange or its affiliates for any CCVA Claims or other similar sexual abuse claims that the Diocese of Orange or its affiliates have tendered or may tender to Westchester. Westchester asserts that the CCVA Claims may not qualify

for coverage under the Industrial Excess Policies on the following grounds, including without limitation:

    a.    to the extent that the Diocese of Orange does not establish that the injuries alleged in the CCVA Claims were "unexpected[] and unintentional[]";

    b.    to the extent that the CCVA Claims do not involve an or "occurrence" within the meaning of the Industrial Excess Policies;

    c.    to the extent that the CCVA Claims resulted from the Diocese of Orange's or its affiliates' failure to mitigate damages;

    d.    to the extent that the CCVA Claims resulted from the Diocese of Orange's or its affiliates' failure to promptly take all reasonable steps to prevent other "personal injury liability" arising out of the same or similar conditions that gave rise to the initial occurrence, claim, or suit;

    e.    to the extent that the Diocese of Orange or its affiliates failed to cooperate with Westchester as required under the Industrial Excess Policies;

    f.    to the extent the Diocese of Orange or its affiliates made voluntary payments for the CCVA Claims;

    g.    to the extent that the Diocese of Orange or its affiliates failed to provide timely notice of an occurrence, claim, or suit, as required under the Industrial Excess Policies;

    h.    to the extent that the Industrial Excess Policies contain exclusions relating to sexual abuse;

    i.    to the extent that the CCVA Claims do not allege any "personal injury liability" during the relevant policy periods;

    j.    to the extent that the CCVA Claims do not implicate the attachment points of the Industrial Excess Policies;

    k.    to the extent that the Diocese of Orange or its affiliates are not

insureds under the Industrial Excess Policies; or

    l.    to the extent that the Diocese of Orange or its affiliates have not met their burden to establish the existence of or material terms and conditions of the Industrial Excess Policies.

53. A judicial determination is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and duties as provided above. This controversy is incapable of resolution without judicial adjudication. Accordingly, Westchester has no plain, speedy, and adequate remedy at law. Westchester requests a declaratory judgment determining Westchester's rights and obligations as respects the duty to indemnify, if any, the Diocese of Orange or its affiliates for the CCVA Claims.

54. Pursuant to 28 U.S.C. § 2201, Westchester seeks, and is entitled to, a judicial determination concerning the parties' rights and obligations, if any, under the Industrial Excess Policies regarding any indemnity of the Diocese of Orange for the CCVA Claims.

## **THIRD CLAIM FOR RELIEF – AS AGAINST DIOCESE OF ORANGE**
## **(Reimbursement)**

55. Westchester incorporates by reference, as if fully restated herein, each of the preceding paragraphs.

56. Westchester has incurred and will continue to incur attorneys' fees and other expenses in connection with its defense of the Diocese of Orange in the *John Doe E.G.D.* action and other CCVA Claims.

57. To the extent that Westchester has no duty under any of the Industrial Excess Policies to afford a defense to the Diocese of Orange in any or all of the CCVA Claims unless and until the Diocese of Orange satisfies the retained limit by paying the limits of the underlying limits of the Centennial Primary Policies for any occurrence, Westchester has a right to be reimbursed by the Diocese of Orange for

1  some or all attorneys' fees, costs, and other expenses that it has or may pay or incur
2  in the defense of the CCVA Claims, including the *John Doe E.G.D.* action, pursuant
3  to *Buss v. Superior Court*, 16 Cal.4th 35 (1997), *Scottsdale Ins. Co. v. MV*
4  *Transportation*, 36 Cal.4th 643 (2005), and related cases.

5      58.    To the extent that Westchester has no duty under any of the Industrial
6  Excess Policies to indemnify the Diocese of Orange for resolution of any or all of the
7  CCVA Claims by settlement or judgment, Westchester has a right to be reimbursed
8  by the Diocese of Orange for some or all indemnity that it has or may pay or incur for
9  the CCVA Claims, including the *John Doe E.G.D.* action, pursuant to *Blue Ridge Ins.*
10 *Co. v. Jacobsen*, 25 Cal.4th 489 (2001) and related cases.

11     59.    Westchester has reserved its rights to reimbursement in correspondence
12 to the Diocese of Orange agreeing to pay or defend certain of the CCVA Claims.

## **PRAYER FOR RELIEF**

WHEREFORE, Westchester respectfully requests the Court to enter an order:

1. Declaring whether or not Westchester has any indemnification obligations to the Diocese of Orange or its affiliates for any CCVA Claims;

2. Declaring whether or not Westchester has a defense obligation to the Diocese of Orange or its affiliates for any CCVA Claims;

3. To the extent it is determined that the Industrial Excess Policies provide coverage for the CCVA Claims, a declaration of whether or not the Industrial Excess Policies are implicated only after the retained limit is satisfied through payment of the limits of the underlying insurance, such that Westchester does not have a "drop down" duty to defend or indemnify the CCVA Claims;

4. To the extent it is determined that Industrial Excess Policies do not provide coverage for the CCVA Claim, a declaration that Westchester

is entitled to recoup defense or indemnity costs that it has paid to or behalf of the Diocese of Orange and its affiliates regarding any CCVA Claims;

5. Costs of suit; and

6. Granting any other relief that the Court deems just and proper.

Dated: July 11, 2024         **CLYDE & CO US LLP**

By: */s/ Alexander E. Potente*
    Alexander E. Potente
    Jason J. Chorley

Dated: July 11, 2024         **O'MELVENY & MYERS LLP**

By: */s/ Richard B. Goetz*
    Richard B. Goetz
    Zoheb Noorani
    Jessica A. Snyder

    Attorneys for Plaintiff
    WESTCHESTER FIRE INSURANCE
    COMPANY, as successor in interest to
    Industrial Underwriters Insurance
    Company

# DEMAND FOR TRIAL BY JURY

PLEASE TAKE NOTICE that Westchester Fire Insurance Company hereby demands a trial by jury as to all issues so triable.

Dated: July 11, 2024           **CLYDE & CO US LLP**

By: */s/ Alexander E. Potente*
Alexander E. Potente
Jason J. Chorley

Dated: July 11, 2024           **O'MELVENY & MYERS LLP**

By: */s/ Richard B. Goetz*
Richard B. Goetz
Zoheb Noorani
Jessica A. Snyder

Attorneys for Plaintiff
WESTCHESTER FIRE INSURANCE
COMPANY, as successor in interest to
Industrial Underwriters Insurance
Company

CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800

20                                                          Case No.
WESTCHESTER'S COMPLAINT FOR DECLARATORY JUDGMENT