UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:24-cv-01539-MRA-ADS | Date | June 1, 2026 |
|---|---|---|---|
| Title | *Westchester Fire Insurance Company v. The Roman Catholic Bishop of Orange* | | |

| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |
|---|---|

| Melissa H. Kunig | None Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT [84] [85]**

Before the Court are the parties' cross-motions for partial summary judgment. ECF 84, 85. The Court read and considered the moving, opposing, and reply papers and held a hearing on December 15, 2025. ECF 93. For the reasons stated herein, the Court **GRANTS** summary judgment in favor of Defendant The Roman Catholic Bishop of Orange with respect to the issue of whether Plaintiff Westchester Fire Insurance Company owes a primary duty to defend under the Defense Settlement provision. The Court **DENIES** the balance of the motions.

## I.    BACKGROUND

This is an insurance coverage dispute concerning whether Plaintiff and Counterdefendant Westchester Fire Insurance Company ("Westchester"), as successor in interest to Industrial Underwriters Insurance Company, owes Defendant and Counterclaimant The Roman Catholic Bishop of Orange ("RCBO") duties to defend or indemnify RCBO in connection with underlying sexual abuse actions brought against RCBO ("the CCVA Actions"). Westchester filed this action on July 11, 2024, seeking declaratory relief as to the rights and obligations of the parties in connection with liability insurance policies Westchester issued to RCBO. ECF 1 ¶ 1. RCBO filed its answer and counterclaims on September 26, 2024. ECF 26.

### A.    The Centennial Primary Policies[1]

RCBO obtained primary commercial general liability insurance coverage through

---

[1] Unless otherwise indicated, the facts set forth in this section are taken from Westchester's Statement of Uncontroverted Facts ("WSUF"), ECF 90, or RCBO's Statement of Uncontroverted Facts ("RSUF"), ECF 91. District courts are not required to make findings of fact on a motion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:24-cv-01539-MRA-ADS | Date | June 1, 2026 |
|---|---|---|---|
| Title | *Westchester Fire Insurance Company v. The Roman Catholic Bishop of Orange* | | |

Centennial Insurance Company ("Centennial"), which spanned from July 21, 1981, to July 1, 1987 (the "Centennial policies," "primary policies," or "underlying policies"). ECF 90 ¶ 1. The parties stipulated to the best available evidence and the terms and conditions of the Centennial policies issued to RCBO from July 1981 to July 1984. *Id.* ¶ 2; ECF 81. The commercial general liability coverage in the Centennial policies contain per-occurrence limits of $500,000. WSUF ¶ 3. The Centennial policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* ¶ 38. The Centennial policies do not contain any aggregate limit for bodily injury claims (except for bodily injuries included within the Completed Operations Hazard, which is not applicable here). *Id.* ¶ 4.

Under the Centennial policies, Centennial owed RCBO duties to defend and pay the limits for losses within the coverage of its policies. *Id.* ¶ 6. Centennial has been liquidated and its assets distributed; it is not providing defense or indemnity for the CCVA Actions. *Id.* ¶ 8. It has not paid the $500,000 limit for any CCVA Action. *Id.* ¶ 9.

**B.      The Umbrella Policies**

The Industrial Underwriters Insurance Company issued commercial umbrella policies to RCBO for consecutive policy periods spanning from June 18, 1981, to July 1, 1984 ("the Umbrella Policies"). WSUF ¶ 11. Westchester is the successor in interest in connection with the Umbrella Policies. *Id.* ¶ 12.

Each Umbrella Policy provides that Westchester will "pay on behalf of the insured the ultimate net loss in excess of the retained limit hereinafter stated, which the insured may sustain by reason of liability imposed upon the insured by law, arising out of an occurrence or assumed by the insured under contract for: (1) Personal Injury Liability." *Id.* ¶ 17. The Umbrella Policies contain an "Ultimate Net Loss" definition, which states that the policies do not apply to "defense, investigation, settlement, or legal expenses covered by underlying insurance." *Id.* ¶ 21.

The Umbrella Policies define the "retained limit" as "the greater of: (a) the total of the applicable limits of the underlying policies listed in Schedule A hereof, and the applicable limits

---

for summary judgment. Fed. R. Civ. P. 52(a)(3). Instead, the Court "may assume that the material facts as claimed and adequately supported by the moving party are admitted existing without controversy except to the extent that such material facts are (a) included in the Statement of Genuine Disputes and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L-R 56-4; *see also* Fed. R. Civ. P. 56(c). The Court has reviewed and considered all evidence in the record, including stipulations, declarations, and documentary evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:24-cv-01539-MRA-ADS | Date | June 1, 2026 |
|---|---|---|---|
| Title | *Westchester Fire Insurance Company v. The Roman Catholic Bishop of Orange* | | |

of any other insurance collectible by the insured [$500,000]; or (b) an amount as stated in Item 4(c) of the declarations as the result of any one occurrence not covered by the said policies or insurance [$10,000]." *Id.* ¶ 23. The Retained Limit provision of the Umbrella Policies further provides: "In the event of the reduction or exhaustion of the aggregate limits of liability of the underlying policies listed in Schedule A by reason of losses paid thereunder, this policy, subject to the above limitations, in the event of reduction, shall pay the excess of the reduced underlying limits; or (2) in the event of exhaustion, shall continue in force as underlying insurance." *Id.* ¶ 24.

The Underlying Insurance provision of the Umbrella Policies obligates Westchester to "assume charge of the settlement or defense of any claim or proceeding against [RCBO] resulting from" an occurrence that exhausts the underlying insurance, "where this policy applies immediately in excess of such underlying insurance, without the intervention of excess insurance of another carrier." *Id.* ¶ 26.

The Defense Settlement provision of the Umbrella Policies states: "With respect to any occurrence not covered, as warranted, by the underlying policies listed in Schedule A hereof or not covered by any other underlying insurance collectible by the insured, but covered by the terms and conditions of this policy except for the amount of retained limit specified in Item 4(C) of the declarations, the company shall . . . defend any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient." *Id.* ¶ 25.

The Umbrella Policies define "occurrence" in the personal-injury context as "an accident or happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally causes injury to persons or tangible property during the policy period." *Id.* ¶ 18. "Personal Injury" in the abuse context "means (a) bodily injury, sickness, disease, disability, shock, mental anguish and mental injury; ... and (e) assault and battery not committed by or at the direction of the insured . . . ." *Id.* ¶ 19.

### C.    CCVA Actions

In this litigation, RCBO seeks to obtain coverage from Westchester to fund the defense of—and pay potential settlements and judgments arising from—numerous tort actions brought against RCBO under the California Child Victims Act ("the CCVA"). *Id.* ¶ 27. The CCVA allows survivors of child sexual assault to bring civil lawsuits arising out of their sexual assault until their 40th birthday or within five years of the date the plaintiff discovers or reasonably should have discovered that the psychological injury or illness occurring after the age of majority was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:24-cv-01539-MRA-ADS | Date | June 1, 2026 |
|---|---|---|---|
| Title | *Westchester Fire Insurance Company v. The Roman Catholic Bishop of Orange* | | |

caused by the sexual assault, whichever is later.  *See* Cal. Code Civ. Pro. § 340.11.  It also opened a "revival window" from January 1, 2020, to December 31, 2022, which allowed all survivors regardless of age to file civil lawsuits.  *Id.* § 340.16.

RCBO has been named as a defendant in more than two hundred lawsuits brought pursuant to the CCVA.  *Id.* ¶ 29.  The underlying plaintiffs (the "CCVA Plaintiffs") allege claims of abuse by priests and clergy who served RCBO and certain of its affiliates in leadership roles, spanning from the 1970s to the 1990s.  *Id.* ¶¶ 29, 31; ECF 84-3 (CCVA Amended Master Complaint).  The CCVA Plaintiffs allege that RCBO enabled and facilitated sexual assault, harassment, and abuse, willfully failed to take reasonable steps to avoid acts of abuse, and intentionally implemented measures designed to conceal the abuse.  ECF 84-3 ¶¶ 42, 46, 49.  The CCVA Actions allege different theories of liability, including intentional torts, strict liability, and negligence.  *Id.* at 16–48.

### D.    Procedural History

Westchester filed suit on July 11, 2024, asserting three causes of action: (1) Declaratory Judgment – No Duty to Defend; (2) Declaratory Judgment – No Duty to Indemnify; and (3) Reimbursement.  ECF 1 at 14–18.  Westchester seeks a declaration that it has no present duty to defend or indemnify any CCVA Action unless and until RCBO satisfies the per-occurrence limit established by its underlying or primary policies—in other words, Westchester seeks a judicial determination that it does not have a duty to "drop down" in place of Centennial Insurance Company, the (now insolvent) company through which RCBO holds its primary insurance policies.  ECF 90 ¶ 36; ECF 84.  RCBO filed its Answer and Counterclaim on September 26, 2024, seeking, *inter alia*, defense and indemnity coverage from Westchester for the CCVA Actions.  *Id.* ¶ 37; ECF 26.

On December 20, 2024, the Court granted the parties stipulation to stay "[a]ll causes of action not related to the drop-down duty [to] defend issue."  ECF 46.  The Court further directed the parties to file cross-motions for partial summary judgment on the drop-down duty to defend issue, allowing the parties to file other dispositive motions upon the lifting of the stay.  *Id.* at 2.  The parties filed their cross-motions for summary judgment on September 22, 2025.  ECF 84 (Westchester's Motion for Partial Summary Judgment), ECF 85 (RCBO's Motion for Partial Summary Judgment).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate where the movant has shown that "there is no genuine dispute as to any material fact and the movant is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:24-cv-01539-MRA-ADS | Date | June 1, 2026 |
|---|---|---|---|
| Title | *Westchester Fire Insurance Company v. The Roman Catholic Bishop of Orange* | | |

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is properly granted "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Material facts are those which may affect the outcome of the case." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *Anderson*, 477 U.S. at 248); *In re Caneva*, 550 F.3d 755, 760 (9th Cir. 2008). "A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Long*, 442 F.3d at 1185; *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted). Where the moving party does not bear the burden of proof at trial, it need only show that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party has met this initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56); *Norse v. City of Santa Cruz*, 973 (9th Cir. 2010) (en banc). The court must grant summary judgment for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III.   **DISCUSSION**

The issue presented by the cross-motions is whether Westchester owes RCBO a duty to defend the CCVA Actions. Westchester's Motion argues that the insolvency of Centennial, RCBO's primary insurer, does not obligate Westchester to drop down in place of Centennial, and it has no duty to defend or indemnify unless and until Centennial or RCBO pays the per-occurrence limit established by the Centennial policies. ECF 84 at 7. In its Opposition and Cross-Motion, RCBO argues that the Defense Settlement provision in the Umbrella Policies creates primary umbrella coverage that is triggered independently of the primary policies' coverage. ECF 87 at 6. RCBO also argues that the Ultimate Net Loss provision in the Umbrella Policies obligate Westchester to pay RCBO's defense expenses, separate from any duty to defend. *Id.* at 13–14. Because all issues unrelated to the drop-down duty to defend have been stayed pursuant to the parties' stipulation, ECF 45, this Order addresses only whether Westchester owes

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:24-cv-01539-MRA-ADS | Date | June 1, 2026 |
|---|---|---|---|
| Title | *Westchester Fire Insurance Company v. The Roman Catholic Bishop of Orange* | | |

RCBO a primary duty to defend pursuant to the Defense Settlement provision.[2]

The Defense Settlement provision requires Westchester to defend an "occurrence not covered . . . by the underlying [Centennial] policies . . . but covered by the terms and conditions of" the Umbrella Policies.   ECF 81-1 at 27.   RCBO argues that this provision creates stand-alone primary defense coverage of the CCVA Actions.   ECF 85-1 at 7.   Westchester argues that the CCVA Actions do not trigger coverage under this provision because the CCVA Plaintiffs allege occurrences at least potentially covered by the underlying Centennial policies.

"Primary insurance provides coverage immediately upon the occurrence of a loss or an event giving rise to liability, while excess insurance provides coverage only upon the exhaustion of specified primary insurance." *Legacy Vulcan Corp. v. Superior Ct.*, 185 Cal. App. 4th 677, 689 (2010) (citing *Century Surety Co. v. United Pac. Ins. Co.*, 109 Cal. App. 4th 1246, 1255 (2003)).   "Insurance policies sometimes include both excess and umbrella insurance."   *Id.* "Umbrella insurance provides coverage for claims that are not covered by the underlying primary insurance." *Id.*   (citing *Powerine Oil Co. v. Superior Ct.*, 37 Cal. 4th 377, 398 (2005)).   Under those circumstances, "an umbrella insurer 'drops down' to provide primary coverage." *Id.*

Here, the Defense Settlement provision creates primary coverage for the specific circumstances defined in the Policies.   Under the plain terms of the Umbrella Policies, two conditions must be satisfied in order to trigger primary defense coverage under the Defense Settlement provision: (1) there must be an occurrence that is "not covered" by the underlying Centennial policies, and (2) that occurrence must be covered by the terms and conditions of the Umbrella Policies.   In the event of such an occurrence, Westchester must "defend any suit against [RCBO] alleging such injury or destruction and seeking damages on account thereof."   ECF 81-1 at 27.

A.   **"Occurrence Not Covered" Refers to Indemnity Coverage in the Underlying Policies, not Defense Coverage**

To determine whether the Defense Settlement obligates Westchester to defend the CCVA

---

[2] After the instant Motions were taken under submission, RCBO filed an opposed Motion to Lift Stay as to the Retained Limit issue.   ECF 102.   RCBO's proposed order on the Motion contemplates the possibility that further discovery and supplemental briefing on the retained limit issue may be necessary.   ECF 102-2.   That Motion is set for hearing on June 23, 2026.   The Court will therefore address whether the Retained Limit issue is ripe for resolution, and if so, whether summary judgment should be granted on that issue, in a separate order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:24-cv-01539-MRA-ADS | Date | June 1, 2026 |
|---|---|---|---|
| Title | *Westchester Fire Insurance Company v. The Roman Catholic Bishop of Orange* | | |

Actions, the Court must first determine whether some or all of the CCVA Actions allege an "occurrence not covered" by the underlying Centennial policies.  On that question, the parties dispute whether "covered" refers to defense coverage or to indemnity coverage owed by Centennial.  According to RCBO, the phrase "[a]ny occurrence not covered" refers to indemnity coverage.  ECF 87 at 7.  According to Westchester, it refers to Centennial's duty to defend—*i.e.,* whether the CCVA Actions are "potentially" covered by the Centennial Policies.  ECF 89 at 7.  The difference is significant because an insurer's duty to defend is broader than its duty to indemnify, and it may exist "even where the coverage is in doubt and ultimately does not develop." *Dillon v. Hartford Acc. & Indem. Co.*, 38 Cal. App. 3d 335, 339 (1974); *Burlington Ins. Co. v. Affordable Hous. Alternatives, Inc.*, No. 2:14-CV-00733-ABC, 2014 WL 3611644, at *1 (C.D. Cal. July 11, 2014) ("[T]he duty to defend is broader than the duty to indemnify and may exist even if the damages ultimately are not covered.").

If, as Westchester claims, "any occurrence not covered" means any occurrence for which no *defense* duty is owed by Centennial, then Westchester would not owe any duty defend under the Defense Settlement provision, because Centennial would plainly owe a duty to defend the CCVA Actions.  There can be no dispute that the CCVA Plaintiffs allege claims that are "potentially" covered under the terms of the Centennial policies—and that is all that is necessary to trigger Centennial's duty to defend the CCVA Actions.  *See Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276–77 (1966) ("An insurer . . . bears a duty to defend whenever it ascertains facts which give rise to the potential of liability under the policy.").  That the CCVA Plaintiffs allege occurrences or injuries that are, according to RCBO, not covered by the Centennial policies (for example, invasion of the rights of privacy) is irrelevant to whether Centennial owes a duty to defend, because Centennial would be obligated to defend the CCVA Actions in their entirety. *Buss v. Superior Ct.*, 16 Cal. 4th 35, 48 (1997) ("[W]e have . . . held that, in a 'mixed' action, the insurer has a duty to defend the action in its entirety.").

If, on the other hand, "any occurrence not covered" refers to indemnity coverage owed by Centennial, as RCBO argues, the question then becomes whether there is a gap in the indemnity coverage provided by Centennial on the one hand and Westchester on the other, such that the CCVA Actions are outside the scope of the former but within the scope of the latter.  RCBO argues that Westchester provides broader coverage because: (1) Centennial defines occurrence as an accident, while the Umbrella policies cover "a "happening or event," which would include the assaults at issue in the CCVA Actions; and (2) Centennial covers "bodily injury," while the Umbrella extends to "shock, mental anguish and mental injury" as well as "invasion of the rights of privacy."  ECF 87 at 9–10.  This gap, according to RCBO, demonstrates that the CCVA Actions allege occurrences not covered by Centennial, and therefore trigger the Defense Settlement Provision.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:24-cv-01539-MRA-ADS | Date | June 1, 2026 |
|---|---|---|---|
| Title | *Westchester Fire Insurance Company v. The Roman Catholic Bishop of Orange* | | |

The Court begins by observing that, although the parties each cite numerous cases in support of their respective positions, there is no authority squarely addressing the issue presented—whether an umbrella insurer owes a duty to defend based on a provision that calls for defense coverage for occurrences "not covered" by a primary insurer, where the occurrence would fall within the primary insurer's defense coverage but not the primary insurer's indemnity coverage. For the reasons stated herein, the Court concludes that "occurrences not covered" refers to the scope of indemnity coverage provided by the underlying Centennial policies, and RCBO has demonstrated that the CCVA Actions include occurrences that fall outside the scope of that coverage, thereby satisfying the first condition of the Defense Settlement Provision.

Westchester argues that the Defense Settlement provision does not trigger its duty to defend because "Westchester owes a defense only if an occurrence is 'not covered by'—i.e., falls outside the scope of—'the underlying policies . . . but [is] covered by'—i.e., falls within—'the terms and conditions of' the [Umbrella] policies." ECF 89 at 8. Westchester cites several cases which stand for the proposition that "covered" refers to the scope of the underlying insurance. *Id.* at 7. According to Westchester, these cases each involved an occurrence "potentially" covered by the underlying policy, so the umbrella insurer had no duty to defend. ECF 89 at 8. In *Wells Fargo Bank v. California Insurance Guarantee Association*, the court explained that "a layperson would have understood the phrases 'covered by said underlying insurance' and 'not covered by underlying insurance' as referring to the *scope* of the underlying insurance." 38 Cal. App. 4th 936, 948 (1995). And in *Ticor Title Insurance Co. v. Employers Insurance of Wausau*, 40 Cal. App. 4th 1699 (1995), the court further explained that "[i]n the context of an insurance policy, coverage means 'inclusion within the scope of an insurance policy,' not 'the act or fact of covering.'" *Id.* at 1709. "Thus 'coverage' has nothing to do with how, in reality, the insurer acts with respect to its insurance obligations." *Id.*

But Westchester's insistence that "covered" refers to the *scope* of the underlying insurance coverage seemingly undercuts its own position, because as a matter of basic insurance law, the scope of the underlying Centennial policies—that is, the actual types of injuries and claims for which Centennial provided coverage—is narrower than the universe of claims for which Centennial would owe a duty to defend. *Scottsdale Ins. Co. v. Mendoza*, No. C-11-04398 DMR, 2012 WL 12921067, at *4 (N.D. Cal. July 23, 2012) ("The duty to indemnify has a narrower scope than the duty to defend."). Stated another way, because the duty to defend is broader than duty to indemnify, "insurers are sometimes required to defend their insureds even in situations in which the loss is not ultimately covered" by the terms of the underlying policy. *Scottsdale Ins. Co. v. CNC Techs. LLC*, No. 217CV03190VAPEX, 2018 WL 7507430, at *4 (C.D. Cal. Nov. 21, 2018) (quoting Anthem Elecs., Inc. v. Pac. Emps. Ins. Co., 302 F.3d 1049, 1054 n.2 (9th Cir. 2002)). But unlike the duty to defend, an "insurer's duty to indemnify runs to claims that are *actually*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:24-cv-01539-MRA-ADS | Date | June 1, 2026 |
|---|---|---|---|
| Title | *Westchester Fire Insurance Company v. The Roman Catholic Bishop of Orange* | | |

*covered*, in light of the facts proved." *Buss*, 16 Cal. 4th at 45 (emphasis added); *Nw. Pipe Co. v. RLI Ins. Co.*, 734 F. Supp. 2d 1122, 1131 (D. Or. 2010) ("An occurrence is defined in terms of an event triggering indemnification rather than defense.").

That possibility is illustrated by the circumstances of this case. The CCVA Plaintiffs arguably assert claims that are outside the "scope" of the Centennial Policies because the Centennial Policies do not provide indemnity coverage for certain forms of mental injury or the invasion of privacy alleged by the CCVA Plaintiffs. To be sure, Centennial would owe RCBO a duty to *defend* those claims under California law insofar as they are brought in a "mixed action" that also asserts claims potentially covered by the Centennial Policies. *See Buss*, 16 Cal. 4th at 46–47. But if RCBO is ultimately found liable to the CCVA Plaintiffs for such claims, Centennial would owe no duty to indemnify RCBO for those claims that do not fall within the terms Centennial's coverage—*i.e.,* that are outside the "scope" of the Centennial policies. Under Westchester's cases, the Court looks to the actual coverage provided by the underlying policies, not to the broader duty to defend. As RCBO puts it, it is the potential for loss that would not be indemnified by the Centennial policies, paired with the potential for indemnity under the Umbrella policies, that triggers Westchester's defense obligations. ECF 88 at 6.

The Court further agrees with RCBO that Westchester's interpretation of the phrase "occurrence not covered" as referring to *defense* coverage runs afoul of logic and settled insurance law principles. It bears repeating that an insurer's duty to defend may exist even when "*coverage is in doubt and ultimately does not develop.*" *Saylin v. Cal. Ins. Guarantee Ass'n*, 179 Cal. App. 3d 256, 263 (1986) (emphasis added). Cases applying this principle expressly acknowledge the distinction between the existence of coverage, on the one hand, and the existence of a duty to defend, on the other. *Id.* This principle makes Westchester's reading of the Defense Settlement Provision, which refers to occurrences not "covered," untenable.

That conclusion is further reinforced by another fundamental principle of insurance law— that "any uncertainty or ambiguity in an insurance contract is to be construed most strongly against the insurer." *McClintick v. Leonards*, 103 Cal. App. 768, 774 (1930). In *Wells Fargo*, the court concluded that the term "covered" was "not ambiguous" and clearly referred to the "scope of the underlying insurance." *Wells Fargo*, 38 Cal. App. 4th at 948. Yet, as used in the Umbrella Policies, there remains uncertainty as to whether that refers to the scope of the underlying insurer's defense obligations or the scope of the underlying insurer's indemnity obligations. And to the extent that there is uncertainty, the Court must resolve that ambiguity in favor of coverage. *Id.* at 942.

Indeed, in *Ticor Title*, the case upon which Westchester principally relies, the excess policy

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:24-cv-01539-MRA-ADS | Date | June 1, 2026 |
|---|---|---|---|
| Title | *Westchester Fire Insurance Company v. The Roman Catholic Bishop of Orange* | | |

provided that the insurer would cover defense expenses for occurrences "for which no defense coverage is provided by the underlying insurance." *Ticor Title*, 40 Cal. App. 4th at 1707. Unlike that policy, which specifically refers to occurrences "for which no *defense* coverage is provided by the underlying insurance," the Umbrella Policies instead refer more vaguely to occurrences "not covered." Westchester attempts to minimize this distinction and claims that it "proves the unremarkable point that an insurer can use more than one verbal formulation to achieve the same result." ECF 89 at 8 n.2. But as *Ticor Title* itself instructs, the Court "must look to the specific language of the excess policy to ascertain the existence of a duty to defend." *Ticor Title*, 40 Cal. App. 4th at 1707. Here, the Umbrella Policies speak to coverage, not defense coverage, and any uncertainty created by that lack of precision must be resolved against Westchester.

For these reasons, the Court concludes that an occurrence is "not covered" by the underlying Centennial policies, and would therefore satisfy the first condition of the Defense Settlement provision, if it is an occurrence that is not within the scope of the Centennial policies—*i.e.*, if it would not be indemnified by the Centennial policy.

**B.    The CCVA Actions Involve Occurrences Not Covered by the Centennial Policies But Covered by the Umbrella Policies**

Having determined that "any occurrence not covered" refers to the scope of indemnity coverage provided by the Centennial policies, the Court must now determine whether the CCVA Actions allege any such occurrences, and if so, whether those occurrences are covered by the Umbrella Policies.

To do so, the Court begins with the text of the policies. Under the Centennial policies, "'occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." ECF 81-2 at 55. Under the Umbrella Policies, "'[o]ccurrence' means either an accident or happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally causes injury to persons or tangible property during the policy period." ECF 81-1 at 28. The Umbrella Policies define "personal injury" as "bodily injury, sickness, disease, disability, shock, mental anguish and mental injury; . . . or invasion of rights of privacy; and . . . assault and battery not committed by or at the direction of the insured." *Id.*

Westchester argues that the relevant question is whether the CCVA claims potentially constitute one or more covered occurrences under the Centennial policies. ECF 89 at 11; *see also* ECF 86 ("[T]he dispositive, threshold question is whether [RCBO's] underlying policies potentially cover the CCVA claims."). Westchester argues that the CCVA Actions allege that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:24-cv-01539-MRA-ADS | Date | June 1, 2026 |
|---|---|---|---|
| Title | *Westchester Fire Insurance Company v. The Roman Catholic Bishop of Orange* | | |

RCBO's negligent supervision, retention, and hiring caused the abuses suffered, and that alleged negligence constitutes an "accident" within the meaning of the Centennial policies under the California Supreme Court's decision in *Liberty Surplus Insurance Corp. v. Ledesma & Meyer Construction Co., Inc.*, 5 Cal. 5th 216 (2018). ECF 86 at 8. Therefore, Westchester argues, because the CCVA Actions allege facts that constitute an occurrence potentially covered by the Centennial policies, Centennial is solely responsible for defense of those actions and Westchester owes no duty to defend as the umbrella insurer. *Id.*

Westchester's argument, however, relies on the mistaken premise that "any occurrence not covered" refers to defense coverage, and for the reasons explained above, *supra* Section III.A, the Court rejects that argument. Westchester is correct that all that is required to trigger Centennial's duty to defend the CCVA Actions is an "occurrence" potentially covered by the Centennial policy. *See Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 300 (1993) (recognizing duty to defend is triggered by bare "potential" or "possibility" of coverage). But to the extent that the CCVA Actions allege occurrences that are not "covered" (*i.e.*, not within the scope of) the Centennial indemnification coverage but that are covered by the Umbrella Policies, those occurrences would trigger Westchester's duty to drop down as a primary insurer even if Centennial would owe a concurrent primary to defend the CCVA actions. *See Cranford Ins. Co., Inc. v. Allwest Ins. Co.*, 645 F. Supp. 1440, 1447 (N.D. Cal. 1986) ("[B]ecause the claim asserted might have been excluded under the Cranford and Industrial policies yet covered by the Continental policy, Continental stood in the position of a primary insurer and was under a duty to defend."); *see also Am. States Ins. Co. v. Ins. Co. of Pennsylvania*, 800 F. App'x 452, 454 (9th Cir. 2020) (recognizing that umbrella may owe duty to defend underlying suit in a "co-primary capacity" with primary insurer with respect to claims not covered by primary insurance).

Consequently, even if under *Ledesma*, the negligence claims asserted by the CCVA Plaintiffs against RCBO are "occurrences" as defined by the Centennial policies, that does not end the inquiry. Rather, the Court must ask whether the CCVA Plaintiffs *also* allege claims or injuries that potentially fall within the Umbrella Policies' definition of occurrence but not the Centennial policy's definition of occurrence.

RCBO argues that the different definitions of occurrence create a "coverage gap," which is widened by the policies' differing definitions of covered injuries. ECF 87 at 9–10. RCBO points specifically to claims asserted by the CCVA Plaintiffs including intentional infliction of emotional distress, sexual harassment, sexual battery, and human trafficking, which, according to RCBO, would constitute an occurrence "covered" by the Umbrella Policies but "not covered" by the narrower Centennial policies. *Id.* at 12. RCBO also refers to non-physical injuries alleged by the CCVA Plaintiffs, including grooming, exploitation, harassment, humiliation, loss of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:24-cv-01539-MRA-ADS | Date | June 1, 2026 |
|---|---|---|---|
| Title | *Westchester Fire Insurance Company v. The Roman Catholic Bishop of Orange* | | |

dignity, and invasion of privacy, which fall outside Centennial's narrow coverage for bodily injuries but within the Umbrella's broader personal injury coverage. ECF 88 at 8.

According to Westchester, these arguments disregard California's "cause" test for occurrences. ECF 86 at 10–11. With regard to the "intentional acts," Westchester argues that the "alleged abusive conduct is not itself the occurrence, but the effect of an occurrence," and the only relevant conduct is RCBO's alleged negligent supervision, hiring, and retention. *Id.* Westchester also points out that both policies "exclude[s] injuries that are expected or intended." *Id.* at 12. With regard to the non-physical injuries, Westchester again argues that the *harms* alleged by the CCVA Plaintiffs are not "occurrences," but rather an effect of the relevant occurrence, which it defines as RCBO's alleged negligence (which, Westchester argues, is covered by the CCVA Actions). *Id.* at 7.

The Court concludes that RCBO has the better reading of the Umbrella Policies and the law. Under the Umbrella Policies, an occurrence includes a "happening or event" that causes an injury, which includes "shock, mental anguish and mental injury." ECF 81-1 at 32. The Centennial Policies, by contrast, define an occurrence as an accident which causes physical injuries. The CCVA Plaintiffs allege that as a result of RCBO's alleged sexual assault, harassment, and abuse, they have suffered "psychological, mental and emotional distress." ECF 84-3 at 10. Such allegations constitute a "happening or event" that caused "shock, mental anguish and mental injury" (an occurrence under the Umbrella Policies), but do not constitute an "accident" that caused physical injury (an occurrence under the Centennial Policies). Westchester's reference to the "cause" test ignores the plain language of how occurrences are defined in the policies, and neither case it cites considered whether an underlying lawsuit alleged a covered occurrence. *Whittaker Corp. v. Allianz Underwriters, Inc.*, 11 Cal. App. 4th 1236, 1241 (1992) ("The issue here is whether there was a covered injury *within the policy period.*" (emphasis added)); *Safeco Ins. Co. of Am. v. Fireman's Fund Ins. Co.*, 148 Cal. App. 4th 620, 634 (2007) (*"[F]or purposes of determining the number of policy limits (or deductibles) available,* 'occurrence' focuses on the event or events *causing* the injury." (emphasis added)). Westchester does not explain how allegations of emotional or mental injuries caused by allegedly intentional acts of assault or abuse would not satisfy the Umbrella Policies' definition of "occurrence." Its attempts to characterize those injuries as merely "harms" resulting from a single "occurrence" (alleged negligence) covered by the Centennial Policies ignores the text of the respective policies. Nor does Westchester persuasively explain why the distinction between "accident" in the Centennial Policies and "happening or event" in the Umbrella Policies does not create a coverage gap, where the latter "cover[s] intentional acts which cause harm unintended by the insured." *Ins. Co. of Penn. v. City of Long Beach*, 342 F. App'x 274, 276 (9th Cir. 2009) (citing *United Pac. Ins. Co. v. McGuire Co.*, 229 Cal. App. 3d 1560, 1566 (1991)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:24-cv-01539-MRA-ADS | | Date | June 1, 2026 |
|---|---|---|---|---|
| Title | *Westchester Fire Insurance Company v. The Roman Catholic Bishop of Orange* | | | |

For the foregoing reasons, the Court concludes that RCBO has demonstrated that the CCVA Actions trigger Westchester's duty to defend the CCVA Actions under the Umbrella Policies' Defense Settlement Provision. The Court therefore **GRANTS** summary judgment in favor of RCBO and against Westchester on the issue of whether Westchester owes RCBO a duty to defend the CCVA claims.

## IV.   CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. The Roman Catholic Bishop of Orange's Motion for Summary Judgment [85] is **GRANTED** in part. The Court **GRANTS** summary judgment in favor of the Roman Catholic Bishop of Orange on the issue of whether Westchester Fire Insurance Company owes a duty to defend in connection with the CCVA Actions. The remainder of the Motion is **DENIED**.

2. Westchester's Motion for Summary Judgment [84] is **DENIED**.

**IT IS SO ORDERED.**

_____ : _____

Initials of Deputy Clerk     mku